UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATALIA HOWELL,<br><br>    Plaintiff,<br><br>v.<br><br>STRM LLC - GARDEN OF EDEN, et al.,<br><br>    Defendants. | Case No. 20-cv-00123-JSC<br><br>**ORDER RE: DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 38 |

Natalia Howell, who is representing herself, brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA") against her former employer 21227 Foothill, LLC ("Garden of Eden") (named as STRM LLC - Garden of Eden), Garden of Eden owners Soufyan Abouahmed and Shareef Radwan El-Sissi, and her former manager Andrew Do (collectively, "Defendants").[1] Ms. Howell alleges that Defendants' denial of hours, refusal to promote her, and termination of her employment were adverse employment actions constituting race, gender, sexual orientation, and disability discrimination under Title VII, as well as disability discrimination and retaliation in violation of the ADA. Defendants' motion to dismiss the Second Amended Complaint, ("SAC") is now pending before the Court. (Dkt. No. 38.) After carefully considering the parties' briefs and the relevant legal authority, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), VACATES the December 17, 2020 hearing, and GRANT Defendants' motion to dismiss Ms. Howell's Title VII claims

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. Section 636(c). (Dkt. Nos. 6, 23.)

predicated on race and disability, as well as her claims against the individual defendants, but otherwise DENIES the motion to dismiss.

## FACTUAL & PROCEDURAL BACKGROUND

### A. Second Amended Complaint Allegations

Ms. Howell, who identifies as a "woman of color, and androgynous lesbian," was injured while working as a sales associate at the Garden of Eden in June 2018. (Dkt. No. 34, SAC, at 4:4-7. [2]) Although another manager gave her permission to leave work and seek medical attention, Andrew Do denied her request to go to the hospital. (*Id*. at 6:21-28). An MRI indicated that she suffered from a herniated disc with sciatic nerve pain. (*Id.* at 13:20.) This made sitting and standing difficult. (*Id.* at 13:21.) She applied for worker's compensation but was told that Defendants denied her worker's compensation claim. (*Id.* at 7:8-9.) Ms. Howell requested the following accommodations to ensure she could return to work: a stool for sitting, a step stool for reaching inventory, masks to help with the poor ventilation in the shop, and floor padding and standing pads for the cashier's desk. (*Id.* at 16:5-19). Mr. Do denied each of these requests for accommodations, stating, "If you can't come in I'll have to let you go . . . ." (*Id.* at 16:14.) Howell then requested further leave to complete physical therapy for her injury. (*Id.* at 17:19-23.) After requesting leave, Defendants terminated Ms. Howell's employment. (*Id.* at 17:26-28.)

Ms. Howell never received a negative report and often received positive reviews from patrons. (*Id.* at 4:9-18.) Due to her good performance, Ms. Howell was promised a future management position. (*Id.* at 4:21-22.) However, Ms. Howell contends she was harassed and discriminated against daily by the managers and owners of Garden of Eden. (*Id.* at 4:28-5:2.) No other employee at Garden of Eden shared all three of her identities. (*Id.* at 4:24.) Ms. Howell was one of three women of color working at Garden of Eden, but she was the only woman of color who dressed "as boyish." (*Id.* at 9:24-27.) Soufyan Abouahmed, Shareef Radwan El-Sissi, Mr. Do, and another manager, Luis, would make jokes about gender and sexual orientation while she spoke with customers. (*Id.* at 5:23-25.) This included using terms like "carpet-munching," "[three] ways," and calling a customer Ms. Howell was assisting a "thot." (*Id.* at 6:1-2.) The

---

[2] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

owners and managers of Garden of Eden also would make comments about what Ms. Howell was "mixed with." (*Id.* at 9:13.) Mr. Do told Ms. Howell that accepting phone numbers from women in the store was inappropriate and she should not be speaking to any other person at the store, particularly female employees and patrons. (*Id.* at 6:6-7.) After this, she had her hours cut. (*Id.* at 9:23-23.)

Ms. Howell often had difficulty requesting time off, as Mr. Do would say that her requests had been lost, and Ms. Howell would have to take pictures of the slips to prove she submitted a request. (*Id.* at 10:17-22.) When Ms. Howell asked for extra hours, she would be told that there was no more work. (*Id.*) Another female employee, Ashley, "who looked far different from" Ms. Howell did not have the same trouble requesting time off and would also be given double shifts upon request. (*Id.*)

In July 2018, Ms. Howell filed a complaint against Garden of Eden with the Department of Fair Housing and Employment, and she was notified her employer would be investigated. (*Id.* at 14:25-27.) The same day Ms. Howell was notified, Mr. Do threatened her with denial of workers' compensation and benefits if she did not drop the complaint. (*Id.* at 14:28-15:1.) When Ms. Howell did not drop the complaint, she did not receive workers' compensation or benefits. (*Id.* at 15:8-12.)

### B. Procedural History

The Court incorporates its summary of the procedural history from its September 30, 2020 Order which granted in part and denied in part Defendants' motion to dismiss the First Amended Complaint. (Dkt. No. 33.) Ms. Howell thereafter filed her SAC again alleging claims of race, gender, sexual orientation, and disability discrimination. (Dkt. No. 34 at 19:6-11.) The now pending motion to dismiss followed. (Dkt. No. 38.)

## DISCUSSION

Defendants again move to dismiss all of Ms. Howell's claims, including Ms. Howell's retaliation claim which the Court previously found adequately pled. Defendants argue: (1) Ms. Howell again fails to allege that she was terminated *because* of her race, gender, or sexual orientation in her Title VII claim; (2) Ms. Howell still does not allege that she is a qualified individual under the ADA; (3) Ms. Howell's retaliation claim fails to establish a causal link

between her request for accommodations and her termination; and (4) all claims against the Individual Defendants should be dismissed because there is no individual liability under Title VII and the ADA. The Court already resolved the third and fourth issues in its prior Order and will not revisit that decision here. Ms. Howell has adequately pled a claim for retaliation under the ADA and there is no basis for individual liability under Title VII or the ADA. (Dkt. No. 33 at 10-12.)

**A. Title VII Race, Gender, and Sexual Orientation Discrimination**

The elements of a Title VII discrimination claim are that the plaintiff: (1) belongs to a protected class, (2) performed her job satisfactorily, (3) suffered an adverse employment action, and (4) the employer treated her differently because of her membership in the protected class. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (internal citation omitted). The fourth element—that the plaintiff was subjected to adverse employment action *because of* her membership in a protected class—can be alleged either through direct evidence of discrimination, such as a supervisor's derogatory comment about her race or gender, *see, e.g.*, *E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1050 (9th Cir. 2009), or through circumstantial evidence, which may include allegations that similarly situated individuals outside the plaintiff's protected class were treated more favorably or that other circumstances surrounding the at-issue employment action give rise to an inference of discrimination, *see Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105-06 (9th Cir. 2008). "While an employment discrimination plaintiff need not plead a prima facie case of discrimination to survive a motion to dismiss," courts generally "take each element in turn in determining whether [a plaintiff] has stated a plausible claim for relief." *Brown v. FPI Mgmt., Inc.*, No. C-11-05414-YGR, 2012 WL 629182, at *3 (N.D. Cal. Feb. 27, 2012) (internal citation omitted).

The Court previously found—and Defendants do not dispute here—that Ms. Howell has adequately alleged the first three elements of her Title VII claim. The issue is whether she has adequately alleged the fourth element: that Defendants implemented any adverse employment action *because* of her race, gender, or sexual orientation. In her Second Amended Complaint, Ms. Howell has included allegations regarding derogatory comments about race, gender, and sexual orientation made by the owners and managers at Garden of Eden. Namely, questions regarding

what she is "mixed with," comments regarding "carpet munching" and "[three] ways," and references to a female customer Ms. Howell was assisting as a "thot." (SAC at 5:27-6:3.) Ms. Howell alleges that following the "thot" comment in front of a customer, she was called into Mr. Do's office and told that she was no longer allowed to speak to "wom[e]n who worked or came in the store" because the owners "did not appreciate that Natalia Howell was speaking to female patrons and accepting numbers they gave me." (SAC at 12:23-28.) Further, "no other female in the store who looked like Natalia was told this or told not to speak to specific people" and as result of this disparate treatment her hours were cut. (*Id*. at 12:27-13:1.) Ms. Howell alleges that she "stood out at work" as an "androgynous lesbian" who dressed "boyish." (*Id*. at 13:3-4.) Drawing all inferences in Ms. Howell's favor, she has alleged that her hours were cut because she was no longer allowed to talk to female customers on account of her gender and sexual orientation. *See Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1747 (2020) ("discrimination based on homosexuality or transgender status necessarily entails discrimination based on sex; the first cannot happen without the second."); *cf. Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 874–75 (9th Cir. 2001) (holding that a male had a sex discrimination hostile work environment claim because he was verbally "attacked" and "derided" for not conforming to his peers' gender-based stereotypes).

Ms. Howell, however, has not alleged an adverse action based on her race. While she alleges that another employee, Ashley, was given special treatment, double shifts, more pay, and extra work, and that Ms. Howell was denied all these things, she does not indicate what Ashley's race is—just that she "looked far different from me." Ms. Howell also does not identify Ashley's job position. (SAC at 10:17-21.) *See Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003), *as amended* (Jan. 2, 2004) ("[I]ndividuals are similarly situated when they have similar jobs and display similar conduct") (footnote omitted); *Lin v. Potter*, No. C-10-03757-LB, 2011 WL 1522382, at \*12 (N.D. Cal. Apr. 21, 2011) (finding that the plaintiff failed to meet the fourth element where she failed to allege that the employee who received a promotion instead of her was similarly situated regarding eligibility for promotion and failed to allege that he was a different race than her). Further, the comment regarding what Ms. Howell is "mixed with" standing alone does not demonstrate an adverse action on account of her race. *See Merrick v. Farmers Ins. Grp.*,

892 F.2d 1434, 1438 (9th Cir. 1990) ("[s]tray remarks are insufficient to establish discrimination").

Accordingly, the motion to dismiss to Ms. Howell's Title VII claim is granted as to her race claim (claim one), but denied as to her gender and sexual orientation claims (claims two and three). The motion to dismiss is also granted as her Title VII claim predicated on disability discrimination (claim four). As the Court noted when it previously dismissed this claim, disability is not a protected class under Title VII. *See Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093 (9th Cir. 2008) (noting that Title VII does not proscribe disability discrimination). Plaintiff will be granted to leave to amend to the extent that she can plead additional facts in support of her race discrimination claim.

### B. ADA Disability Discrimination

To state a disability discrimination claim under the ADA, a plaintiff must plead enough facts to allege that she: (1) suffers from a disability, (2) is otherwise qualified for employment, and (3) suffered discrimination because of her disability. *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1133 (9th Cir. 2001) (internal citations omitted). The ADA defines disability in regards to the first element as (1) "a physical or mental impairment that substantially limits one or more of the major life activities of the individual," (2) a record of such impairment, or (3) being regarded as having such impairment. 42 U.S.C. § 12102(1). The term "qualified individual" means an individual who, "with or without reasonable accommodation," can perform the "essential functions" of the position. 42 U.S.C. § 12111(8). A plaintiff can meet the third element—that she was discriminated against "by reason of" her disability—by alleging facts sufficient to establish that her disability was a "motivating factor" in an adverse employment action. *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1021 (9th Cir. 2010) (internal citation omitted).

As with the prior version of her complaint, the only issue here is whether Ms. Howell has adequately alleged that she is a qualified individual. The employee bears "the burden of showing the existence of a reasonable accommodation that would have enabled [her] to perform the essential functions of the available job." *Dark v. Curry Cnty.*, 451 F.3d 1078, 1088 (9th Cir. 2006). Ms. Howell alleges that she was able to work as long as she had accommodations, including a stool for sitting, a stepping stool for reaching, and standing pads for the register. (SAC

at 16:4-19.) However, Ms. Howell also alleges that she requested a three-month leave because her primary doctor found it "medically fit" for her to stop working, which suggests she was unable to perform her job at the time of her termination. (SAC at 17:15-20). Although Defendants argue that this is an admission that she was not a qualified individual, in *Humphrey*, the Ninth Circuit held that "a leave of absence for medical treatment may be a reasonable accommodation under the ADA" where it would "permit [an employee], upon [her] return, to perform the essential functions of [her] job." 239 F.3d at 1135-1135. The ADA does not require an employee to demonstrate that such leave is certain or even likely to be successful. *See id.* at 1137. Ms. Howell alleges that her leave was to complete physical therapy to "realign her back and given [sic] suitable accommodations for her return back to work." (SAC at 17:19-20.) Drawing all inferences in Ms. Howell's favor, these allegations are sufficient to show that a disability leave might have allowed her to gain at least a partial recovery and, after a period of a few months, resume working at Garden of Eden. *See Ravel v. Hewlett-Packard Enter. Inc.*, 228 F. Supp. 3d 1086, 1904 (E.D. Cal. 2017) (holding that a three-month disability leave was a reasonable accommodation under the ADA). Accordingly, Ms. Howell has adequately alleged that she is a qualified individual.

Defendants' motion to dismiss Ms. Howell's disability discrimination claim (claim five) is therefore denied.

## CONCLUSION

Based on the foregoing, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. The motion is granted as to Ms. Howell's Title VII race and disability-based claims (claims one and four) and her claims against the individual defendants. Ms. Howell is granted leave to amend her Title VII race claim, but the Title VII disability claim and the claims against the individual defendants are dismissed with prejudice.

Ms. Howell shall file any amended complaint within 21 days. The only dismissed claim she may reassert and attempt to replead is the Title VII race claim; she may not include the individual defendants or the Title VII disability discrimination claim in her amended complaint. To the extent that Defendant again moves to dismiss, it may only move on the claim that is dismissed here, not the claims that the Court has already concluded are adequately pled. Ms. Howell may also elect to just proceed with the claims the Court held are adequately pled: (1)

discrimination based on gender and sexual orientation under Title VII, (2) disability discrimination under the ADA, and (3) retaliation under the ADA.

The Court encourages Ms. Howell to contact the Northern District's Legal Help Center. Ms. Howell can make an appointment by calling (415) 792-8982.

This Order disposes of Docket No. 38.

**IT IS SO ORDERED.**

Dated: December 11, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge